UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LISA CONNER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:17-cv-00021-AGF |
| | ) |
| ASCENSION HEALTH and | ) |
| SEDGWICK, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This is an action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for disability benefits under an employer sponsored disability benefit plan. This matter is before the Court on the cross motions for summary judgment filed by Defendants Ascension Health and Sedgwick and by Plaintiff Lisa Conner. ECF Nos. 36 and 39. Also before the Court is Defendants' motion to strike Plaintiff's Exhibit. ECF No. 53. For the reasons set forth below, the cross motions for summary judgment will be denied, and the case will be remanded to the plan administrator for reevaluation. Defendants' motion to strike will be denied as moot.

# BACKGROUND

This case arises out of the denial of long-term disability benefits. Prior to May 2013, Plaintiff was employed at St. Vincent's Medical Center as a perioperative nurse, and she was eligible to participate in the Ascension Health Long-Term Disability Plan ("LTD Plan"). The LTD Plan provides:

> Disability or disabled means that due to an Injury or Sickness which is supported by objective medical evidence, the Participant requires and is receiving from a Licensed Physician regular, ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and . . . the Participant is unable to perform:
>
> (A) during the first 24 months of Benefit payments, or eligibility for benefit payments, each of the Material Duties of the Participant's Regular Occupation; and
>
> (B) after the first 24 months of Benefit payments . . . any work or service for which the Participant is reasonably qualified taking into consideration the Participant's training, education, experience and past earnings.

ECF No. 17 at 65-66.

Under the LTD Plan, "[t]he Claims Administrator [has] the discretionary authority to decide all questions arising in connection with matters" set forth in the LTD Plan. Further, the LTD Plan provides that "[a]ny interpretations or determinations made pursuant to such discretionary authority of the Claims Administrator shall be upheld in judicial review unless it is shown that the interpretation or determination was an abuse of discretion." *Id*. at 75. In other words, the LTD Plan gives the Claims Administrator, or in this case, Sedgwick, "discretionary authority to determine whether a Participant is eligible to receive or continue to receive a Benefit under the Plan . . ." *Id*.

Plaintiff was involved in a motor vehicle accident on May 20, 2013, causing injuries to Plaintiff's neck, left shoulder, and left arm. Plaintiff was treated by her primary care physician, Dale Tucker, M.D., and she stopped working on May 22, 2013. In June 2013, Plaintiff underwent surgery to repair her rotator cuff, which was torn in the accident.

2

In August 2013, Plaintiff began treating with Stephen Kramarich, M.D., a spine and pain management physician, on a monthly basis. His treatment notes reflect that Plaintiff experienced chronic pain in her neck, left shoulder, and left arm following the accident, and he prescribed medications to manage Plaintiff's pain. Plaintiff complained of cognitive limitations due to her pain medication (ECF No. 22 at 308), and a number of Dr. Kramarich's treatment notes indicate that Plaintiff was exhibiting "signs and symptoms involving cognition." ECF No. 19 at 15, 19, 23, 27, 31.[1]

On September 27, 2013, Plaintiff exhausted short-term disability benefits, and her claim was converted to a claim for long-term disability ("LTD") benefits. Under the LTD Plan, a participant is eligible for benefits beyond 24 months only if she is disabled from any occupation for which she is reasonably qualified. Sedgwick approved Plaintiff's LTD claim on November 20, 2013, with benefits beginning on November 27, 2013 and ending on November 26, 2015.

On September 2, 2015, a Sedgwick nurse case manager reviewed Plaintiff's claim to determine whether she was eligible to continue receiving benefits beyond November 26, 2015, the last day of the 24-month period. On November 12, 2015, Plaintiff underwent a functional capacity evaluation ("FCE"). The FCE indicated that Plaintiff was able to occasionally lift up to 20 pounds, but was unable to reach overhead with her left upper extremity. The FCE concluded that Plaintiff was able to function in the light physical demand category. The FCE also noted that Plaintiff was taking a

---

[1] Dr. Kramarich's treatment notes did not provide any further details regarding these signs and symptoms involving cognition.

number of medications, including MS Contin for pain; Lortab for breakthrough pain; Zanaflex, a muscle relaxer; Celexa for depression; Estradiol for hormones; Fiorinal for migraines; and Xanax for sleep and anxiety. Plaintiff was driven to her FCE appointment by a family member due to her taking MS Contin. ECF No. 19 at 330-38.

A LTD transferable skills analysis ("TSA") was performed on behalf of Sedgwick, which relied heavily on the FCE. The TSA identified multiple occupations suitable for Plaintiff's training, experience, education, and physical abilities, including nurse instructor, office nurse, school nurse, and nurse consultant. *Id*. at 388.

On November 26, 2015, Sedgwick terminated Plaintiff's LTD benefits based upon its review of the FCE, the TSA, and Plaintiff's medical records. Plaintiff appealed the decision on May 25, 2016, claiming, inter alia, that the side effects of her medications caused cognitive impairments. In support of her appeal, Plaintiff attached a psychological evaluation completed by Richard Nay, M.D., on February 4, 2016; recent medical records from Dr. Tucker and Dr. Kramarich; and a vocational assessment ("VA") performed by Mark Capps, a vocational expert.

In his psychological evaluation of Plaintiff, Dr. Nay opined that Plaintiff demonstrated severe deficits in attention and concentration skills, and had a very difficult time staying focused and remaining on task. ECF No. 22 at 311. Dr. Nay determined that Plaintiff "continues to be fully and totally disabled from a psychological perspective, and as such would not be able to perform any work on an 8-hour per day, 5-day per week basis." He concluded that it was "quite clear that medication side effects do play a significant role in her clinical presentation, particularly with respect to cognitive

4

dysfunction and attention/concentration deficits." *Id*. at 310.

In Plaintiff's more recent medical records, Dr. Kramarich confirmed that he had continued to prescribe Norco and MS Contin due to continued pain that Plaintiff had experienced since the May 2013 car accident. Dr. Tucker noted in his records that Plaintiff took morphine for chronic pain, which caused sedation and impaired judgment. Dr. Tucker also completed an interrogatory on April 4, 2016, in which he opined that "the medication [Plaintiff] takes would impair her cognitive function. She would be unable to work as a nurse or any other job." ECF No. 22 at 326.

Mark Capps performed a vocational assessment ("VA") on May 24, 2016. He opined that in light of Dr. Nay's psychological evaluation, Plaintiff could not perform any of the occupations identified by the TSA due to her "cognitive/mental impairments and side effects of her medication." *Id.* at 329. Specifically, he concluded that Dr. Nay's assessment revealed that Plaintiff could not perform the occupation of nurse consultant, nurse instructor, office nurse, or school nurse because all of those occupations are high skilled and require the ability to perform activities that Plaintiff cannot do, such as, inter alia, maintaining attention for two-hour segments and completing a normal workday without interruption from psychologically-based symptoms. He also noted that Plaintiff would be unable to perform certain work activities for more than 20% of the workday, including understanding, carrying out, and remembering very short and simple instructions, and sustaining an ordinary routine without special supervision. *Id.*

Plaintiff's appeal was reviewed on behalf of Sedgwick by Susan Orenstein, Ph.D., a board certified psychologist, and Martin Mendelssohn, M.D., a board certified

5

orthopedic surgeon. Dr. Orenstein opined that because there was no indication that Plaintiff was being treated for a mental health condition, Plaintiff did not suffer from "impaired functioning requiring restrictions or limitations due to a primary mental health condition." ECF No. 22 at 501. However, Dr. Orenstein specifically stated that she would "defer to another specialist regarding [Plaintiff's] primary medical conditions, medication side effects[,] and functioning as a result." *Id.* at 501.

Dr. Mendelssohn found that although Plaintiff had "ongoing self-reported complaints, a comprehensive history and physical examination indicating functional or neurological deficits is not provided that would substantiate the need for restrictions from November 27, 2015 through return to work." *Id.* at 509. Thus, Dr. Orenstein and Dr. Mendelssohn found no necessary restrictions or limitations on Plaintiff's ability to work. Sedgwick subsequently notified Plaintiff that its decision to terminate LTD benefits was upheld on August 1, 2016.

On November 1, 2016, Plaintiff filed this lawsuit, claiming that she was improperly denied continuing LTD benefits. She seeks the reinstatement of LTD benefits, as well as an award of her unpaid LTD benefits from November 27, 2015 to the present, plus prejudgment interest. On August 14, 2017, Defendants filed a cross motion for summary judgment, asserting that their decision to deny benefits was reasonable, as well as a counterclaim to recover the amount paid by the LTD Plan while Plaintiff was receiving social security.

**ARGUMENTS OF THE PARTIES**

In her motion for summary judgment and opposition to Defendants' motion for

summary judgment, Plaintiff argues that she met her burden in proving that she remained disabled as of November 28, 2015, and that Sedgwick abused its discretion in terminating her benefits. Plaintiff relies on notes from her treating physicians, including Dr. Norman, Dr. Kramarich, and Dr. Tucker; the psychological evaluation completed by Dr. Nay; the FCE ordered by Sedgwick; and the vocational assessment completed by Mr. Capps. Plaintiff argues that Sedgwick abused its discretion by failing to consider the impact of the side effects of Plaintiff's medications on her ability to work and that she could not perform the occupations identified by Sedgwick because she is unable to reach overhead.

Defendants argue that Plaintiff did not carry her burden in submitting proof that she remained disabled, and Sedgwick did not abuse its discretion in denying her ongoing benefits. Defendants also contend that Sedgwick's two reviewing physicians did consider the side effects of Plaintiff's medications, but were unable to conclude that Plaintiff was disabled from the side effects. Defendants also argue that the FCE constitutes medical evidence confirming Plaintiff's ability to performed light-duty work.

## DISCUSSION

### Standard of Review

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015) (citation omitted). On a motion for summary judgment, facts and all reasonable inferences must be construed in favor of the nonmoving party; however, "facts must be viewed in the light most favorable to the nonmoving party only

if there is a genuine dispute as to those facts." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. County of St. Louis, Mo.*, 690 F.3d 1004, 1011 (8th Cir. 2012) (citations omitted). The movant is entitled to summary judgment when the nonmovant has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**ERISA Standard**

"In general, a claim administrator's denial of benefits is subject to de novo review by the district court. Where the plan grants the administrator or fiduciary 'discretionary authority' to determine eligibility for benefits, however, the standard of review is relaxed, and abuse of discretion becomes the appropriate benchmark." *Cooper v. Metro. Life Ins. Co.*, 862 F.3d 654, 660 (8th Cir. 2017). "To determine whether the benefit plan gives the administrator or fiduciary discretionary authority, courts must look for explicit discretion-granting language in the policy or in other plan documents." *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003) (citations omitted). Here, the LTD Plan at issue includes the requisite language triggering the Court's abuse of discretion standard. *See Cooper*, 862 F.3d at 660.

Under the abuse of discretion standard, the Court will uphold a claim administrator's decision so long as it is reasonable and supported by substantial evidence. *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014). "A

decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016) (citation omitted). The court must not substitute its own weighing of the evidence for that of the decision-maker. *Gerhardt v. Liberty Life Assur. Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013).

The Eighth Circuit has concluded that under certain circumstances, the side effects of treatment or medication can be disabling under ERISA. *Torres v. UNUM Life Ins. Co.*, 405 F.3d 670, 678, 680 (8th Cir. 2005). "Though potentially difficult to diagnose, chronic pain, depression, and complications due to medications may be disabling alone, or in combination, and the plan administrator has a duty to investigate such claims." *Anderson v. Nationwide Mut. Ins. Co.*, 592 F. Supp. 2d 1113, 1130 (S.D. Iowa 2009); *Torres*, 405 F.3d at 680–81 (finding the plan administrator's failure to consider the side effects of medicine prescribed to the claimant was unreasonable and an abuse of discretion).

Here, Plaintiff submitted evidence of cognitive impairment due to the side effects of her medication on appeal. Dr. Orenstein specifically addressed Plaintiff's claim, noting that her providers had indicated that Plaintiff exhibited cognitive impairment, in part related to the side effects of her medication. Dr. Orenstein identified medical records in which Plaintiff reported depression and anxiety, but specifically noted that there was no indication that Plaintiff was being treated for a mental health condition. Due to the absence of any notes from a psychiatrist or psychotherapist, or referrals for psychological

9

testing, counseling, or psychiatric evaluation, Dr. Orenstein concluded that Plaintiff's impaired functioning did not require restrictions or limitations due to a primary mental health condition. However, Dr. Orenstein specifically stated that she would defer to another specialist regarding medication side effects and Plaintiff's functioning as a result.

Dr. Mendelssohn also reviewed Plaintiff's medical records, including Plaintiff's psychological evaluation conducted by Dr. Nay. He specifically cited to medical records documenting that Plaintiff was prescribed MS Contin and Norco after her car accident, that she continued to use such medications to treat her pain, and that her providers specifically stated that she was unable to work due to the side effects of the medications. However, Dr. Mendelssohn never addressed Plaintiff's assertion that the side effects of her medication caused cognitive impairments such that she was disabled, nor did he explain his conclusion that Plaintiff lacked functional or neurological deficits, which is contrary to the opinions of Dr. Tucker, Dr. Kramarich, and Dr. Nay.

While plan administrators are not required to provide an explanation for their decision when they credit reliable evidence that conflicts with a treating physician's evaluation, they may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Here, Sedgwick's reliance on Dr. Mendelssohn's conclusion to deny Plaintiff benefits was an abuse of discretion because Dr. Mendelssohn failed to consider how Plaintiff's medications affected her ability to perform work. Thus, Sedgwick's decision is not supported by substantial evidence and cannot be affirmed.

A reviewing court must remand a case when the court or agency fails to make

adequate findings or explain the rationale for its decision. *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990). This course of action is appropriate in ERISA cases. *Flynn v. Ascension Health Long Term Disability Plan,* No. 4:13-CV-2449-HEA, 2015 WL 4429767, at *16 (E.D. Mo. July 20, 2015); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) (noting that remand is appropriate when an ERISA plan does not make adequate findings or adequately explain its reasoning)).

Accordingly, the Court will deny both motions for summary judgment and will remand this case to Sedgwick with directions to reopen the administrative record to evaluate the side effects of the Plaintiff's medication on her ability to perform any work or service, as well as her ability to perform any work in light of the limitations on her ability to reach. The Court does not express any opinion as to whether Plaintiff's benefits should be terminated upon the administrator's evaluation on remand.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. ECF No. 36.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **DENIED**. ECF No. 39.

**IT IS FURTHER ORDERED** that Defendants' motion to strike is **DENIED as moot.** ECF No. 50.

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the plan administrator, who shall reevaluate Plaintiff's claim for benefits in light of the side

11

effects of Plaintiff's medication and the limitations on her ability to reach. The administrator shall make every effort to conducts its reevaluation promptly, but in any event within ninety (90) days from the date of this Order.

**IT IS FURTHER ORDERED** that this case is **STAYED** pending completion of the administrative review. The parties are directed to provide a joint status report to the Court in ninety (90) days, outlining the progress of the administrative process. The parties will file a status report every thirty (30) days thereafter advising the Court of the status of Plaintiff's claim.

**IT IS FURTHER ORDERED** that within ten (10) days of any decision made by the plan administrator, the parties will file a joint status report and scheduling plan for the remainder of the case.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 19th day of June 2018.